**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

---------------------------------------------------------------------X

RHONDA YOUNG,

Plaintiff,

-against-

BRENTWOOD UNION FREE SCHOOL DISTRICT and KEVIN COYNE,

Defendants.

---------------------------------------------------------------------X

**Case No.**

**COMPLAINT**

**PLAINTIFF DEMANDS A TRIAL BY JURY**

Rhonda Young ("Plaintiff"), by her attorneys, Palmore Law Group, P.C. and Mesidor, PLLC, against Brentwood Union Free School District ("the District") and Kevin Coyne ("Coyne") (collectively "Defendants"), alleges upon knowledge as to herself and her own actions and upon information and belief as to all other matters as follows:

## NATURE OF THE CASE

1. Plaintiff complains pursuant to the sex/gender and race discrimination provisions of: (i) **Title VII of the Civil Rights Act of 1964**, 42 U.S.C. § 2000e, *et seq.* ("Title VII"); (ii) **42 U.S.C. § 1983**; (iii) the **New York State Human Rights Law**, New York State Executive Law § 296, *et seq.* ("NYSHRL"); (iv) the **Suffolk County Human Rights Law**, Local Law § 528, *et seq.*; and (iv) any other claim(s) that can be inferred from the facts set forth herein and seeks damages to redress the injuries Plaintiff suffered as a result of being subjected to unlawful discrimination by Defendants.

## JURISDICTION AND VENUE

2. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §1331, as this action arises under 42 U.S.C. §2000e, *et seq.*

3. The Court has supplemental jurisdiction over all state and local law claims pursuant to 28

U.S.C. § 1367.

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2), as a substantial part of the actions or omissions giving rise to the claims for relief occurred within this judicial district.

## PROCEDURAL PREREQUISITES

5. Plaintiff timely filed a complaint, upon which this Complaint is based, with the United States Equal Employment Opportunity Commission ("EEOC").

6. Plaintiff received a Notice of Right to Sue from the EEOC, with respect to the instant charges of discrimination. A copy of the Notice is annexed to this Complaint.

7. This action is being commenced within 90 days of receipt of the Notice of Right to Sue.

8. Plaintiff served a Notice of Claim upon the District on August 28, 2024, setting forth the name and address of Plaintiff and her attorney, the nature of the claims brought herein, the time, place and manner in which the claim arose and the damages and injuries claimed to have been sustained.

9. Following receipt of the Notice of Claim, the District requested a hearing pursuant to New York General Municipal Law § 50-H and the hearing was held on October 22, 2024.

## PARTIES

10. At all times material, Plaintiff was and is a Black female and a resident of the State of New York, County of Suffolk.

11. At all times material, Plaintiff was and is a "person" and an "employee" of the District and entitled to protection as defined by Title VII, Section 1983, the NYSHRL and the SCHRL.

12. At all times material, the District was and is a school district, operating multiple elementary

schools, middle schools and high schools in and around Brentwood, New York.

13. At all times material, Coyne was and is an employee of the District and President of the Brentwood Teachers Association.

14. Accordingly, and at all times material, the District was and is an "employer" covered by the statutes referenced herein.

**MATERIAL FACTS**

15. Plaintiff is a highly qualified teacher and administrator in the education field, possessing both academic certifications and extensive experience earned over the last thirty (30) years.

16. Prior to commencing her employment with the District, Plaintiff sought and obtained a Bachelors Degree and Masters Degree from Long Island University and Stony Brook University, respectively.

17. In 2001, the District hired Plaintiff as a Middle School Teacher in the Special Education Department. While employed in this role, Plaintiff continued to advance her educational qualifications, earning a Certification of Advanced Studies in School District Leadership and a School District Administrator certificate, qualifying her to supervise and work at the administrative level.

18. In 2012, Plaintiff was appointed as Department Head for the Special Education Department within the District and, as a result of her stellar performance and demonstrative ability to work collaboratively with her colleagues, Plaintiff was promoted to Assistant Director of Special Services in 2015. In 2020, Plaintiff was promoted yet again, to Director of Special Services.[1]

---

[1] In 2022, Plaintiff's title was changed to Assistant Superintendent of Special Services.

19. Although Plaintiff was continuously achieving success in field, she was nonetheless subject to regular discriminatory, harassing and hostile behavior by Coyne, an employee of the District and President of the Brentwood Teachers Association.

20. Coyne's harassment began in earnest in 2015, almost immediately after Plaintiff undertook the position of Assistant Director of Special Services.

21. Shortly after Plaintiff's appointment to that position, Plaintiff conducted an informal teacher observation walkthrough of one of the schools in the District when Coyne got directly in her face, shouting at her that his teachers would not be intimidated by her. Coyne then unbelievably insinuated that Plaintiff had threatened him in the past, despite the fact that he was actively yelling at her.

22. Plaintiff was shaken by Coyne's verbal assault and immediately reported the incident to the building principal, who did not take any meaningful action.

23. Coyne's harassment did not abate thereafter but continued on a daily basis from October 19, 2015 to the present day, as he constantly called her names, cursed at her and made derogatory comments about her and to her, often publicly.

24. Coyne also regularly insulted Plaintiff, telling her, typically in front of her colleagues, that she did not make decisions in the best interest of the kids and she did not care about the students of the District.

25. Coyne further threatened Plaintiff on a routine basis, such as by informing Plaintiff, and one her Black female subordinates, that he had records on both of them that he would use to expose them and ruin their careers.

26. On or about January 9, 2024, while on District property and in the ordinary course of

business, Plaintiff exchanged several text messages with Coyne in preparation for a meeting with him regarding the presentation of new policies within the Special Education Department.

27. After sending a number of messages back and forth, Plaintiff called Coyne, who did not answer.

28. Instead, at 12:36 PM that day, January 9, 2024, Coyne texted Plaintiff, “I’ll call you right back, my spookiest[2] we get it worked out 😀”

29. Plaintiff was appalled and extremely offended when she saw his text message calling her a vile racial slur.

30. Despite Coyne’s extremely racist message, to say nothing of his “ordinary” harassing acts, Plaintiff attempted to continue on with her work for the District, as she had for over twenty (20) years.

31. Nevertheless, on March 1, 2024, events reached a breaking point for Plaintiff.

32. At approximately 10:00 AM that day, March 1, 2024, Coyne met Plaintiff at her office located at 795 Wisconsin Avenue, Bayshore, New York 11706.

33. The purpose of the meeting was to discuss Coyne’s concerns pertaining to the Special Education Department of the District.

34. Due to Coyne’s routine abusive and harassing conduct, Plaintiff asked her Confidential Secretary to attend the meeting and expressed to Coyne that she was not comfortable

---

[2] “Spook” is an “extremely disparaging and offensive” slang term used to describe a Black person in a contemptuous manner. *Spook Definition*, DICTIONARY.COM, https://www.dictionary.com/browse/spook (last visited March 19, 2025); *see also U.S. v. Mason*, 774 F.3d 824, 835 n. 3 (4th Cir. 2014) (Gregory, J., concurring) (“[T]he term ‘spook’ is a racial epithet.”). It originated in the 1940s as a derogatory term for a Black person. *See Spook Definition*, OXFORD ENGLISH DICTIONARY, https://www.oed.com/dictionary/spook_n?tl=true (last visited March 19, 2025).

meeting with him alone.

35. Coyne did not take kindly to Plaintiff's request for the presence of her Confidential Secretary and insisted the Confidential Secretary's attendance was unnecessary.

36. Shortly thereafter, during a discussion of issues regarding staff, Coyne abruptly rose from his seat and started yelling at Plaintiff, who remained seated, that he was going to record her.

37. Plaintiff responded that if he persisted with his stated intention to record her, she would end the meeting. Plaintiff then left her seat and began moving towards her office door to conclude the meeting.

38. Coyne, however, followed Plaintiff to the door, cornering her against the wall, all the while screaming at her.

39. Indeed, Coyne, who is nearly a foot taller than Plaintiff, stood within less than an inch of Plaintiff. So close, in fact, that the saliva produced from his ongoing shouting peppered Plaintiff's face.

40. As Plaintiff stood trapped by the imposing Coyne and terrified for her physical safety, Coyne continued to scream at Plaintiff that he had never had any issues with Plaintiff's department until she was appointed, meaning that she was somehow at fault for his tirades.

41. Coyne next grabbed the handle of Plaintiff's office door, ripping the door open and causing it to slam into wall mere inches from where Plaintiff was standing.

42. As soon as Coyne left, Plaintiff reported the incident to Nicole Valente, School Personnel Officer, before contacting Wanda Ortiz-Rivera ("Ortiz-Rivera"), then the Interim Superintendent. After describing what occurred to Ortiz-Rivera, Plaintiff explained that

she remained in fear of Coyne and asked to leave for the day. Ortiz-Rivera granted Plaintiff's request.

43. Coyne's outburst severely rattled Plaintiff to the point that it was affecting her work, as she felt unable to function and his actions made her think she was losing her mind.

44. Following Plaintiff's complaint about Coyne, the District undertook an investigation, commencing in March 2024, into Plaintiff's claims pertaining to Coyne and his pattern of verbal and physical abuse, including his use of a racial slur to refer to Plaintiff.

45. Once Coyne learned of Plaintiff's complaint, he immediately sought to retaliate against her by contacting special education teachers and asking to document anything that Plaintiff may have ever said or done that was inappropriate, evidently so Coyne could use that information against Plaintiff.

46. Coyne likewise went out of his way to meet with Plaintiff in an apparent attempt to intimidate her. Specifically, Coyne purposefully added himself to a meeting Plaintiff scheduled with another teacher, for which Coyne's presence was unnecessary.

47. At the meeting, Coyne refused to engage with the actual substance of the meeting. Instead, he proceeded to yell at her regarding the same topics as the March 1, 2024 meeting.

48. Similarly, Coyne made a number of attempts to pointedly undermine Plaintiff, such as visibly and audibly slamming his pen across the table right after Plaintiff asked a question during an interview and forcing Plaintiff to step back from a notable position in the District's Puerto Rican Day parade by pressing his way between Plaintiff and a District board member.

49. The investigation ultimately concluded on June 6, 2024, when counsel for the District

issued a report determining there was "no credible evidence to support a finding that race-based or sex based discrimination" occurred.

50. As a result, the District took no meaningful action to address or correct Coyne's prolonged harassment of Plaintiff.

51. Notably, the District reached its determination despite the fact that Coyne's history of harassment, intimidation and discrimination was well known to District years prior to Plaintiff's complaint.

52. For example, in March 2022, Richard Loeschner, the then Superintendent, reprimanded Coyne for engaging in "aggressive" and "menacing" behavior toward District Administrators, much of which was documented in writing.

53. Significantly, every one of the Administrators whom Coyne has abused are either women, persons of color, or both.

54. For example, when the District had a Black superintendent and a white Director of Special Services, Coyne never blamed the Director of Special Education for anything that he viewed was wrong with the Special Education department. Instead, he routinely blamed either the superintendent, Plaintiff, who was then the Assistant Director, or Plaintiff's Black subordinates.

55. By way of another example, Coyne consistently behaved in an extremely cruel manner towards one of the Black female employees in Plaintiff's department, saying that she was a disaster, claiming that he warned Plaintiff about her, and yelling at her when she asked teachers to stay after conference meetings in conformance with the teachers' association's contract.

56. As yet another example, in an email on which Plaintiff was copied, Coyne threatened to go to a former Black employee's new district and make disparaging comments about him to his new colleagues to ruin his reputation at his new job.

57. Conversely, Coyne did not treat white male administrators with such disrespect. He did not yell at them, rip them apart or attempt to tear down their reputation like he did with Plaintiff and her Black and female colleagues.

58. In light of the District's failure to properly supervise Coyne and address Plaintiff's complaint, discussed above, Plaintiff continues to be required by the District to work with Coyne, who continues to harass Plaintiff to the day of this writing and Plaintiff has no expectation that he will cease.

## *FIRST* CAUSE OF ACTION
## FOR DISCRIMINATION UNDER TITLE VII
## (Against the District Only)

59. Plaintiff repeats and realleges each and every allegation in the preceding paragraphs as if set forth fully herein.

60. 42 U.S.C. § 2000e-2(a)(1) states in part:

> It shall be an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual, or otherwise to discriminate against any individual with respect to their compensation, terms, conditions, or privileges of employment, because such individual's **race**, color, religion, **sex**, or national origin.

(Emphasis added).

61. As described herein, the District discriminated against Plaintiff on the basis of her race (Black) and sex (female), by fostering, condoning, accepting, ratifying, and/or negligently failing to prevent or remedy a hostile work environment that included, among other things,

discriminatory treatment of Plaintiff.

62. The District, through its employees, engaged in unlawful employment practices prohibited by Title VII, by discriminating against Plaintiff on the basis of her race and sex by creating a hostile work environment for Plaintiff.

63. As a result of the District's unlawful discriminatory conduct in violation of Title VII, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which Plaintiff is entitled to an award of monetary damages and other relief.

**_SECOND_ CAUSE OF ACTION**
**UNDER 42 U.S.C. § 1983**
**(Against All Defendants)**

64. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

65. 42 U.S.C. § 1983 states in relevant part as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

66. As set forth herein, Defendants denied Plaintiff her rights as provided under 42 U.S.C. § 2000e, *et seq.* and Plaintiff has suffered damages as a result.

***THIRD* CAUSE OF ACTION**
**FOR DISCRIMINATION UNDER THE NYSHRL**
**(Against All Defendants)**

67. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

68. New York State Executive Law § 296(1)(a) provides that

> It shall be an unlawful discriminatory practice: (a) For an employer or licensing agency, because of an individual's age, **race**, creed, color, national origin, sexual orientation, military status, **sex**, disability, predisposing genetic characteristics, marital status, or domestic violence victim status, … to discriminate against such individual in compensation or in terms, conditions or privileges of employment.

(Emphasis added).

69. As described herein, Defendants engaged in unlawful employment practices prohibited by the NYSHRL, by discriminating against Plaintiff on the basis of her race (Black) and sex (female) by creating, fostering, condoning, accepting, ratifying, and/or negligently failing to prevent or remedy a hostile work environment that included, among other things, discriminatory treatment of Plaintiff.

70. As a result of Defendants' unlawful discriminatory conduct in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which Plaintiff is entitled to an award of monetary damages and other relief.

71. The unlawful discriminatory actions of Coyne constitute malicious, willful, and wanton violations of NYSHRL, for which Plaintiff is entitled to an award of punitive damages.

**_FOURTH_ CAUSE OF ACTION**
**FOR DISCRIMINATION UNDER THE SCHRL**
**(Against All Defendants)**

72. Plaintiff repeats and realleges each and every allegation in the preceding paragraphs as if set forth fully herein.

73. SHCRL § 528-7(A) provides that

> It shall be an unlawful discriminatory practice: (1) For an employer to refuse to hire or employ or to bar or to discharge from employment or to discriminate against any individual in promotion, compensation or in terms, conditions or privileges of employment because of such individual's group identity or status as a victim of domestic violence.

74. SCHRL § 528-6 defines "group identity," in the relevant part, as "[t]he actual or perceived **race**, color, age, national origin, alienage or citizenship status, **gender**, sexual orientation, disability, marital status, or familial status of any individual, as well as the actual military status of any individual." (emphasis added).

75. As described herein, Defendants engaged in unlawful employment practices prohibited by the SCHRL, by discriminating against Plaintiff on the basis of her race (Black) and sex (female) by creating, fostering, condoning, accepting, ratifying, and/or negligently failing to prevent or remedy a hostile work environment that included, among other things, discriminatory treatment of Plaintiff.

76. As a result of Defendants' unlawful discriminatory conduct in violation of the SCHRL, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which Plaintiff is entitled to an award of monetary damages and other relief.

## JURY DEMAND

77. Plaintiff hereby demands a jury trial.

**WHEREFORE**, Plaintiff respectfully requests a judgment against the Defendants:

A. Declaring that Defendants engaged in unlawful employment practices prohibited by TITLE VII, Section 1981, the NYSHRL and the SCHRL in that Defendants discriminated against Plaintiff on the basis of her race (Black) and sex/gender (female), by creating and maintaining a hostile work environment based on Plaintiff's race and sex/gender;

B. Awarding Plaintiff compensatory damages for mental, emotional injury, distress, pain and suffering and injury to her reputation in an amount to be proven;

C. Awarding Plaintiff punitive damages;

D. Awarding Plaintiff attorneys' fees, costs, disbursements, and expenses incurred in the prosecution of the action; and

E. Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy Defendants' unlawful employment practices.

Dated: New York, New York
March 28, 2025

**PALMORE LAW GROUP, P.C.**

Heather M. Palmore
*Attorneys for Plaintiff*
68 South Service Road-Suite 100
Melville, New York 11757
(917) 450-3275
heather@palmorelawgroup.com

**MESIDOR, PLLC**

Marjorie Mesidor
*Attorneys for Plaintiff*
600 Fifth Avenue, Second Floor
New York, New York 10020
(212) 784-6269
mm@marjoriemesidor.com